Well, Melvin Ian Myers, I represent the appellant in this case, Clarence Hearns. This case is before the Ninth Circuit on appeal from a 12B6 dismissal of plaintiff's first amended complaint. I would submit that there are three considerations that are important for the court to consider when it decides this case. First is the procedural posture of this case. Again, this was a dismissal of plaintiff's first amended complaint on a 12B6 motion. This is a civil rights case with a pro se prisoner plaintiff. This court has noted that in civil rights cases where plaintiff appears pro se, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. In applying that standard earlier this year, the court said in compliance with precedent, we bend over backwards to pluck a viable claim from plaintiff's wide ranging complaint. I don't think there is any disagreement in this case that the complaint is not a model of clarity, but it does state allegations sufficient to state a cause of action under the Eighth Amendment, both for failure to protect the plaintiff and for constitutional deprivations regarding the conditions of Mr. Hearns' confinement. The defendants in this case have tried to make the case about magic words and about whether Mr. Hearns alleged exactly as the court would have asked him to, used specific words that the court might have appreciated more. Pro se prisoners proceeding in the federal courts, however, this court has noted, will not be thrown out of court merely for invoking the wrong incantation. So I think first in construing this case, the court really should consider the procedural posture of the case. Second, the defendants have continuously pointed to the Supreme Court's decision in Farmer v. Brennan for the standard of deliberate indifference. Obviously that is the seminal case on deliberate indifference. This court in Wood v. Ostrander, however, decided that essentially, as I read the case, where the defendant creates the risk that ultimately befalls the plaintiff, then that constitutes deliberate indifference. Finally, I would point out that in the conditions of confinement portion of this case, the plaintiff was confined in disciplinary segregation under the conditions outlined in his complaint at pages. Where did those conditions reach, again, in each case, because the facility was designed in Survivors' Case? That's what he said. Or did he say that the Yard had these problems? My understanding of what he said wasn't that his cell had these problems, but that the Yard had these problems. Yes, Your Honor, that is un-cleared. Isn't that quite. Your Honor, I'm not. I do not believe that that's different. Isn't there a difference between having a toilet that doesn't work in the Yard and a toilet that doesn't work in your cell all the time? Certainly, Your Honor. That is, in fact, correct. However, I would get the citation wrong if I attempted to cite it to you, but there is a case that is cited in our briefs that says that deprivation of Yard time itself constitutes a. Okay. They weren't depriving him of Yard time. It may not have been the most pleasant Yard time, but they weren't depriving him of it. It seems a little. I mean, there's a big difference. And it took me a while until I figured out that we weren't talking about his cell. We were talking about the Yard, which he was some of the time, but not on top of all this. I think that's true, Your Honor. But, again, I would suggest that giving the plaintiff's allegations the benefit of the doubt in this case. It is deprivation of Yard time in that he felt that it was a health hazard to go on to the Yard. And he alleges that in his complaint. So I would think that the more you just want to go back to the other issue. So as to the other issue, the basic question is whether he has alleged sufficient facts to demonstrate deliberate indifference of the kind that's required in the case of the law, which is extremely – it's knowing – it's not simply should have known. It's new and recognized and so on. So what facts would you say support that? Well, particularly in this case, Your Honor, I agree with that characterization of the law, but particularly in this case, you have a situation where particular defendants, after being requested not to – let me begin at an earlier point. In this case, you have a situation where there was a memo in May of 1997 that discussed – sent to all defendants – that discussed the threat of violence from certain Muslim inmates on other Muslim inmates if the other Muslim inmates refused to divide or share their prayer materials. You had actual violence against Muslim inmates by the leading Muslim inmates. Finally, specifically with regard to this plaintiff, you have a causal connection between defendants' activities and the attacks on Mr. Hearns. The attack on Mr. Hearns was a direct result of defendant Pons leaving a return address label, either leaving a return address label where these leading Muslim inmates could find it, or giving it to them according to the allegations and the complaints. And, Your Honor – Do you think that from those allegations a jury could infer that the – that the defendant knew of the danger that he was putting Hearns in by doing that? Certainly, Your Honor. Specifically because – Well, first of all, he didn't just leave it around by accident, but he did it on purpose. And then he did it on purpose knowing the danger. Certainly, Your Honor. And specifically so because he knew that there were threats of violence for not sharing religious materials. He knew that where specifically – inmate wear specifically had been targeted. He knew that plaintiff Hearns was going to deliver the next shipment from inmate wear's family of prayer oil directly to inmate wear. And he knew – defendant Pons specifically knew that plaintiff Hearns had asked him, specifically asked him, because he knew the risk of harm to himself and to inmate wear, asked defendant Pons not to tell anyone else. In the face of that, defendant Pons either handed the information to these leading inmates – I'm sorry. You appeared as though you had – No, no, no. I'm fine. I'm fine. Go ahead. No, no. Additionally, with regard to the second attack, you have chaplain Kahn, who is the Islamic chaplain at Caliphate State Prison, telling these leading inmates that plaintiff Hearns does not believe in the Sunnah and believes that there is a prophet after Muhammad. These are – according to the complaint, these allegations would require that these leading inmates kill plaintiff Hearns. And so Farmer v. President – Isn't there an allegation that he suggested or told these – this is the chaplain – told the leading Muslim inmates that Hearns should be killed or needed to be killed?  However, what we have is someone who is trained in Islamic sharia, obviously, because he is an Islamic chaplain, telling these leading inmates facts that would require under Islamic law that plaintiff Hearns be killed. So to say that that risk is not obvious is frankly disingenuous. I would like to reserve the remainder of my time for rebuttal, if that's reasonable. Thank you.  Thank you. Thank you. May it please the Court. Deputy Attorney General Barbara Spiegel on behalf of Defendants Appellees. The district court did not abuse its discretion when it dismissed Mr. Hearns' first amendment complaint without leave to amend. The reasons for that are severalfold. First of all, the court gave Mr. Hearns two opportunities to state a claim and, in fact, gave Mr. Hearns directions twice on what needed to be done in order for him to state a claim under the Eighth Amendment. Mr. Hearns' original complaint was very bare bones, and the two cert defendants felt it was – Well, that's all you need. Your Honor, it was insufficient such that defendants couldn't even frame a response. And defendants – Now, as I understand it, it's fairly detailed. The problem is that he didn't allege in haec verba that the defendants – that the standard that the – but why does he need to do that? If he sets up a set of facts from which – which would lead – permit that inference, why does he need to allege a state of mind separately from a set of facts that would support the state of mind? Well, Your Honor, under Fremmer v. Brennan, subject to the intent and – I understand that. But what I'm saying is, if he alleges a state of facts from which – if he proved it – and this is all a fairly far-fetched set of facts, but given the complaint and given that we're at a 12b6 stage – from which one could infer the state – the requisite state of mind, why does he have to infer a separately alleged state of mind in magic words? Well, we're saying that the Court need not infer, Your Honor, otherwise there's no distinction between him stating a negligence claim, which he might well have done in an Eighth Amendment deliberate indifference claim. He does need more than just several – he put a lot of facts in, but didn't connect the dots to any defendant's state of mind. And the fact that the Plaintiff's Counsel now infers knowledge, I don't – the Court did not view that as the Court's job. The Court looked at what he said. Mr. Hearns put in a lot of allegations about things that had happened to Muslims over the year and a half preceding his stabbing. And what the Court found was that whenever the prison officials knew somebody was in danger, they did something. Any – there were two plots that were uncovered to attack Muslim inmates, and both times the inmates were taken to another yard. Mr. Hearns himself, once he was attacked on the first yard, was – there was an investigation into his safety concerns, and he was transferred to the next yard for that very reason. So he put in what seemed to the Court all the facts he knew about what had gone on, yet he could not tie evil intent to the chaplain, presumably because there is none. Same thing for the other defendants. He basically put in a bunch of facts, saying this is what happened, therefore my rights were violated. And facts on the first issue, for example, were I told him not to tell these people that, and he told them that, okay? And that – and these people had already threatened other people, and especially they had already attacked the person that I was trying to protect. Now, you don't think those facts just on their face indicate, at least allege, that this was done knowingly rather than negligently? No, Your Honor, because what he actually says is that somehow the return address was either negligently left this label in the chapel for them to find or given it to them, but there is nothing actually connecting the plaintiff's terms to that label. He actually says he told the chaplain that whatever prayer oil is sent to inmate Ware should be given to me and I will deliver it to him. That would be a lot of reading between the lines and a lot of golden threads tying together these allegations to infer that there is a connection between the plaintiff, Chaplain Kahn's bad motive, and what – and the fact that ultimately they became aware of who sent prayer oils to the inmates. Your Honor, I think that's more than the court is required to do. One thing I noticed, you mentioned that the court found something about having treated Muslims in a particular way. This is 12B6, isn't it? Yes, it is. The court doesn't make findings. We're looking at the complaint itself, not what actually may have happened. This is true, Your Honor, and I need to correct that. I believe based on looking at just the allegations of the complaint, what the court derived was exactly what was on the paper, and that's what plaintiff alleged, that when there were known concerns, the prison officials acted. More than that, they can't do. And that was in the complaint? Pardon me? Mr. Hearns admitted at least of three incidents where there was a plot on an inmate Campbell, and when it was discovered an inmate Campbell was transferred, there was another unidentified inmate, and a plot was uncovered, and I believe he was transferred as well. The plaintiff himself was transferred to another yard for safety concerns. So he really – the plaintiff himself supported that prison officials act when they have knowledge, and to require anything else really requires them to be clairvoyant. Okay. Yeah, but what – correct me, please, if I'm wrong, but, you know, the incident where he was brought into the chapel, and wasn't the chaplain there at that time? Are you talking about June 20th, 1998, when he was stabbed? No, he was stabbed. The chaplain was there. Your Honor, that is not what I gathered from the complaint. That's what I gathered. The chaplain was there. These leading Muslims had gotten the information about Hearns that could be interpreted that he needed to be done away with, and then the lights went out, and the chaplain just walked out, and then these other guys jumped on him and knifed him. Did I get that all wrong? Your Honor, I have to disagree with you. I've read this complaint numerous times, and there's not any inkling that the chaplain was in the chapel when that stabbing occurred. But Powell was the one that was at the door, who was a guard. Correct. Officer Powell. And he left. Well, that also requires some inferring. What the plaintiff said was Officer Powell did a pat-down search of him at the door before he went into the chapel. Plaintiff alleged he went into the chapel, began to write his lesson on the board, and the plaintiff himself says, I could not see Officer Powell from where I stood, but that's not unusual. So clearly the door and the chalkboard were not within view, and plaintiff didn't seem to allege that there was anything wrong with that. Then somehow inmates came into the chapel, presumably after being checked at the door, and then the lights went out, and then he was stabbed. Okay. Then he was stabbed. Yes, he was, Your Honor, and we don't know if Officer Powell was at the door, if he stepped away to go to the restroom. We have no information about where Officer Powell was, but certainly we don't have information that it was deliberate indifference, that he sent people in knowing they were going to stab him and that he facilitated that attack, which is what is urgent. Well, there are inferences from that. If he was checking them for weapons, the people that stabbed her had weapons on them. He let those through. Your Honor, inmates are very good at hiding weapons. People get stabbed, unfortunately, in prison often, and it's not for the lack of them being checked. It's because they hide them very discreetly.  Well, I mean, he checked them, didn't he? What did he do? Pat them down? Pat them down, Your Honor. Inmates hide weapons in areas that would not be noticed upon a pat-down search. What did you say? Inmates hide weapons in body cavities, so a pat-down search wouldn't find those weapons. They don't put knives there, do they? Yes, they do, actually, Your Honor. Modified shanks, they do. They're all surgeons, too. But that's for another day. At least there's an inference. I'm sorry, Your Honor? There's an inference. I mean, when I read that, that's what I inferred. Well, Plaintiff is asking the Court to infer what I'm saying. If you read the allegations, they're really not there. He's tying things together that are not there. So I see my time is running out. That's all I have for you today.  I'm going to briefly. The Court did give Mr. Hearne several opportunities. The Court did tell him what he needed to do. The Court was satisfied. Could you tell him what the governing standard was? I'm sorry? Could you tell him what the governing standard was under Farmer v. Breggerns? Yes, Your Honor. If the Court were to look at the judge's order under tab six of the excerpts of record, it's called the Order Granting Motion to Set Aside Default, and the Court did a suicide screening and gave the plaintiff leave to amend. Actually, on page six of that order, which is 36 of the excerpts of record, the Court specifically told him what he needed to do to state a claim for failure to protect, and on the next page talks about what he needed to do to state a claim for poor prison conditions. Well, why isn't there one allegation here that basically does the job, and that is the allegation that Khan told inmates that I believe there was a messenger after Prophet Muhammad and that I did not follow the sunnah, because under Islamic shura, anyone in that position must be killed for being an apostate. Chaplain Khan had to know, based on these inmates' past conduct, that this information would lead to my attack. Why isn't that exactly a Farmer v. Brennan allegation? Oh, because, again, Your Honor, it assumes a lot. It assumes that Chaplain Khan knew that these inmates were attacked in the past. No, it doesn't assume it. It says it. Now, it may not be true, but that's what a Farmer v. Brennan allegation would do. Well, it says Chaplain Khan had to know that these inmates' past conduct information would lead to my attack. Right. That assumes that he told them for that purpose, knowing that they would attack him in one way or another. That's right. That's what it states. It may not be true, but what you want or what the judge wanted was a Farmer v. Brennan allegation, which would have been that the defendant did this knowing that he would be attacked. Isn't that what that says right there? Well, again, it's more of a negligence allegation. The way I read it, Your Honor, it's that he would have to know that doing this was negligent of him, not that he did it for the purpose of them attacking. Farmer v. Brennan doesn't require that they don't do it for the purpose. They have to do it knowing what the result will be. That they would create a serious risk of harm. Right. But not for the purpose. Well, and they have to have drawn that inference. Right. But not for the purpose. Not because they want it to happen. No, but they would have to know. So I'm asking, how is that any different than this allegation that's sitting right here? Because, Your Honor, he's saying he had to know instead of he knew that they would and in a ---- But he says why. Because under Islamic Sharia, anyone in that position must be killed for being an apostate. He had to know that. In other words, he knew it. He must have. He necessarily knew it. Not that he should have known it, but that he knew it. Well, again, Your Honor, I read it as he's assuming that the chaplain would know that and he's assuming that he told these people knowing that it would endanger them. And, again, I think that's connecting things. At any rate, that's the closest in allegation to the one that you're saying should have been there. I would agree that's the closest he came, Your Honor. Thank you. Thank you. Briefly, in response, the State has several times mentioned that these allegations would constitute negligence. I would point the Court to footnote 4 in Wood v. Ostrander where this Court said that a jury presented with these facts might find Ostrander's conduct to have been negligent or merely negligent. Well, the problem is that he does several times, though, allege negligence as to some of the key incidents. Certainly. As to the – I mean, I think that Ms. Beevill is right that with regard to the telling them about the prayer oil, he alleged at least in the alternative negligence. And similarly, at one other point, which I can't now recall, he used the term negligence several times, and grossly negligent. So I think if you don't make it on that one allegation, you probably don't make it, on the one that I was reading before. Yes. I'm not certain that I understand your question. However, if the question is if he alleges negligence, can we nonetheless infer something other than negligence? If that's what he's alleging in his complaint. Yes, Your Honor. In fact, I believe the point is that this is not about magic words. It's about what the facts are in the complaint. And the facts as stated are – Well, but the facts as stated, for example, with regard to the label are that he did this either deliberately or negligently. Right? If he did it negligently, it wouldn't meet a Farmer v. Brennan standard. So how could that meet a Farmer v. Brennan standard? Your Honor, I understand that he used the word negligent. I don't think that a pro se prisoner can be held to the artful pleading standard that attorney pleadings are handled with. And, of course, I'm being inartful in my argument at this moment. But I think the point is that the entire argument is based on magic words. He used the word negligent. But if you look at the facts behind what he said, he said this was either left in the chapel for the defendant or for the inmates to find or it was handed to them after he asked them not to. But he says it could have been done negligently, i.e., he could have accidentally left it in the chapel for the inmates to find. He might not have been careful despite having been told what he was told. That's his allegation. It could have, Your Honor. But I think the point is it is not beyond doubt on the face of this complaint that it was done negligently. And I think there's a real question about whether it was done with deliberate indifference. And particularly, Your Honor, I think your point is well taken with regard to the attack in the chapel as well. I apologize for continuing. I see my time has expired. Sorry, go ahead. Your point with regard to the attack in the chapel as well, there was a memo in July of 1997 saying that no inmates would be allowed in the chapel unsupervised. Where was Defendant Powell when the lights went out and when the plaintiff was stabbed? I think that the facts are what we're looking at and not the magic words of negligent. Clearly, this plaintiff did not have the magic words to make the district court happy. But I would again submit that that's not the standard.  Thank you. And thank you for taking this matter pro bono. We appreciate it very much. Thank you. We'll go to the next matter, Skinner v. Roe. Thank you, Your Honor. Thank you.
judges: Hug, Pregerson, Berzon